```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY

ALDO VERA, JR.,                    .
                                   .
        Plaintiff,                 .
                                   .  Case No. 12-mc-00309
vs.                                .
                                   .  Newark, New Jersey
THE REPUBLIC OF CUBA,              .  April 21, 2015
                                   .
        Defendant.                 .
_____    .


ALFREDO VILLOLDO, et al.,          .
                                   .
        Plaintiff,                 .  Case No. 13-mc-00136
                                   .
vs.                                .
                                   .
FIDEL CASTRO RUZ, et al.,          .
                                   .
        Defendant.                 .
                                   .


                    TRANSCRIPT OF HEARING
             BEFORE THE HONORABLE CATHY L. WALDOR
                UNITED STATES MAGISTRATE JUDGE


APPEARANCES:

For the Plaintiff      ROBERT A. SWIFT, ESQ.
Aldo Vera, Jr.:        Kohn, Swift & Graft, PC
                       One South Broad Street
                       Suite 2100
                       Philadelphia, PA 19107
                       (215) 238-1700
                       Email: Info@kohnswift.com


For the Plaintiffs     BRANDON LEVITT, ESQ.
Alfredo Villoldo,      Hall, Lamb and Hall, P.A.
et al.:                Offices at Grand Bay Plaza, Penthouse
                       One
                       2665 South Bayshore Dr.
                       Miami, Florida 33133
                       (305) 374-5030
                       Email: Blevitt@hlhlawfirm.com
```

```
1
    For the Respondent       MATTHEW E. MOLOSHOK, ESQ.
2   and Garnishee The        Hellring Lindeman Goldstein & Siegal
    Northern Trust           One Gateway Center
3   International            Newark, NJ 07102-5386
    Banking                  (973) 621-9020
4   Corporation:            Email: Mmoloshok@hlgslaw.com

5

6   Audio Operator:

7   Transcription Service:   KING TRANSCRIPTION SERVICES
                             3 South Corporate Drive, Suite 203
8                            Riverdale, NJ  07457
                             (973) 237-6080
9

10  Proceedings recorded by electronic sound recording; transcript
    produced by transcription service.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

3

```
 1                  (Commencement of proceedings at 11:14 A.M.)

 2

 3             THE COURT:  All right.  We're here in Vera versus

 4   Republic of Cuba, 12-309, and Villoldo versus Castro Ruz, and

 5   others.  That's 13-136.  These are Judge Hayden cases.  Today

 6   is the 21st of April.  It's approximately 11:20.

 7             And may I have appearances from -- is that

 8   Mr. Levitt on the telephone?

 9             MR. LEVITT:  Yes, Your Honor, Brandon Levitt from

10   the law firm of Hall Lamb & Hall representing the Villoldos.

11             THE COURT:  And you're appearing by telephone, and

12   you're situated in Florida, as I understand.

13             MR. LEVITT:  Yes, Your Honor.  In fact, I filed a

14   motion for pro hac vice this morning.  Our local counsel

15   who's admitted in New Jersey happens to be on maternity

16   leave.  So as of right now, my pro hac vice motion is

17   pending.

18             THE COURT:  All right.  Is there any objection to

19   his appearance for the purpose of today, which is an

20   informational appearance?  No objection?

21             UNIDENTIFIED SPEAKERS:  No, no objection.

22             THE COURT:  Thank you.  May I have appearances of

23   counsel at counsel table?

24             MR. SWIFT:  Your Honor, my name is Robert Swift.

25   I'm with the law firm in Philadelphia of Kohn, Swift & Graft.
```

 1   Good morning.

 2              THE COURT:  Good morning.  And you're here on

 3   12-309?

 4              MR. SWIFT:  I represent the plaintiff, Aldo Vera,

 5   Your Honor.

 6              THE COURT:  Okay.  Go ahead.

 7              MR. MOLOSHOK:  Matthew Moloshok, Hellring Lindeman

 8   Goldstein & Siegal.

 9              THE COURT:  Right.

10              MR. MOLOSHOK:  We represent the Northern Trust

11   International Banking Corporation, which is a respondent in

12   both matters.

13              THE COURT:  All right.  Judge Hayden suggested that

14   I have an in-person discussion about these cases, which,

15   again is purely informational.

16              I -- normally magistrates are not put on

17   miscellaneous cases, but you'll notice now on the docket that

18   I'm managing these cases for whatever management they need.

19              So perhaps somebody could explain to me -- I

20   understand that Judge Hochberg put a stay on the -- is it the

21   309 case, the earlier case?

22              MR. MOLOSHOK:  Well, Your Honor, these are turnover

23   actions.  And there had been a motion filed by Mr. Swift on

24   behalf of the Vera plaintiffs for the turnover of the

25   specified accounts that we had disclosed in response to

1   information demands previously made.

2           That motion was terminated by the judge pending a

3   ruling by the United States Supreme Court in a case, which

4   I'll probably butcher the name of, but which concerns the

5   certain definitions under the Foreign Sovereign Immunities

6   Act, and she said that the motion was terminated and it could

7   be refiled after the Supreme Court issued its ruling.

8           MR. SWIFT:  I think he correctly recited it.

9   However, that doesn't really tell you the full history or

10  explain this rather esoteric area of the law.

11          Would Your Honor like me to explain in some detail?

12          THE COURT:  Yes, if you will.

13          MR. SWIFT:  My client, Aldo Vera, Junior, is the

14  son of a Cuban American who was assassinated in Puerto Rico

15  in 1976.  His -- the people -- the perpetrators were never

16  caught, but when Aldo Vera, Junior, was able to bring a

17  lawsuit as a result of legislation in the United States

18  Congress in the late 1990s, he was able to prove at trial

19  that the government of Cuba, then a -- designated as a state

20  sponsor of terrorism, was responsible for that murder.

21          As a result, he obtained a judgment under

22  § 1605(a)(7) of the Foreign Sovereign Immunities Act.  It's

23  kind of -- Title 28, as Your Honor knows.

24          And that then enabled him to execute on assets of

25  Cuba that were in the United States.  As you know, normally,

 1  it is difficult to execute on the assets of a foreign

 2  sovereign, but not so as regards a state sponsor of terrorism

 3  when the judgment is for terrorism resulting in the death of

 4  an individual.

 5          So the judgment was obtained in Florida.  It was,

 6  you know, registered in the Southern District of New York,

 7  where there are some execution proceedings now pending before

 8  Judge Hellerstein.  And that judgment was then transferred to

 9  this Court pursuant to 28 U.S.C. 1963.

10          It was assigned to Judge Hochberg, and we then had

11  proceedings before Judge Hochberg on the turnover.

12          There have always been issues as to whether

13  electronic fund transfers are part of the property that could

14  be executed upon in this type of proceeding.  Nonetheless,

15  before Judge Hochberg, the parties entered into a consent

16  decree.  And as Your Honor, I believe, is aware, a consent

17  decree overrides normal procedure, and the procedure becomes,

18  then, what is agreed to in the consent decree.  And I can

19  actually read to you from Supreme Court cases that so state.

20          And so in other words, there might be some

21  intervening precedent, such as those cited by Mr. Moloshok,

22  the Hausler [phonetic] and Calderon cases in the Second

23  Circuit, and there was also a related case in the D.C.

24  Circuit, those cases, in my view, don't have a bearing on

25  what we're doing here because those cases did not have

1   consent decrees where the parties agreed to a procedure, a

2   notice procedure, so that the turn- -- so that the turnover

3   could be finalized in some fashion.

4            And in this case, the consent decree that Judge

5   Hochberg signed provided that I was to give notice -- I just

6   want to push this back.  I was to give notice on behalf of

7   the Court to any interested parties.  The bank gave me

8   information as to the parties that might be identified as

9   having an interest pursuant to an electronic fund transfer.

10  And that includes the originator, the originating bank, the

11  beneficiary bank, and the beneficiary.

12           I did give such notice and I filed an affidavit

13  with this Court attesting to that notice having been given.

14           Thereafter, I filed a motion for turnover.

15           By the way, that consent decree provided that if

16  the parties had 60 days in which to file any objections to

17  the turnover; that is, the people receiving notice.

18           THE COURT:  Right.

19           MR. SWIFT:  Otherwise, they could be deemed to have

20  defaulted.

21           In my view, they have defaulted.  Nobody has raised

22  a substantive objection, save the bank, which has said in its

23  own papers that it's merely a stakeholder.  Which raises then

24  the additional question of what standing does the bank have

25  to make substantive objections to the turnover of the money,

1    and frankly, we're not talking about that much.

2            Can I say on the record how much it is?

3            MR. MOLOSHOK:  Sure.

4            MR. SWIFT:  We have -- we have a confidentiality

5    stipulation; that's why.

6            The amount is $144,000, plus, I assume, some

7    accrued interest.

8            So -- and the parties together have spent

9    considerably more time in terms of fees than the amount of

10   money at issue.  And I think it would be frankly in the best

11   interests of all parties if we got this finally resolved.

12           I don't believe, though, the bank should be the

13   beneficiary of all this.  It is the stakeholder.  It has no

14   right to make substantive objections as to why the -- Vera

15   doesn't have a right to this.

16           Vera has shown a prima facie entitlement to the

17   funds by virtue of § 1610 of the Foreign Sovereign Immunities

18   Act, which says that notwithstanding any other provision of

19   law -- and it goes on -- any property of the -- and I am

20   not -- this is a real run-on sentence as only Congress can

21   draft it.

22           THE COURT:  Okay.

23           MR. SWIFT:  But it provides that any property shall

24   be subject to execution notwithstanding any other provision

25   of law which might otherwise provide for immunity to the

1   foreign state.

2           Consequently we believe the money should be turned

3   over and think this Court is bound by the consent order that

4   was entered.

5           And I would just, you know, cite to Your Honor

6   cases --

7           THE COURT:  Thank you.

8           MR. SWIFT:  -- on the -- in the United States

9   Supreme Court.

10          United States v. Armour & Company (1971).  The cite

11  is 402 U.S. 673 at page 681.

12          I think it'd be useful just to read a couple of

13  sentences from that, because it's very strong language as to

14  the import of a consent decree.

15          It's -- and this is the quote:  "Consent decrees

16  are entered into by parties to a case after careful

17  negotiation has produced agreement on their precise terms.

18  The parties waive their right to litigate the issues involved

19  in the case and thus save themselves the time, expense, and

20  inevitable risk of litigation.  Naturally, the agreement

21  reached normally embodies a compromise.  In exchange for the

22  saving of cost and elimination of risk, the parties each give

23  up something they might have won, had they proceeded with the

24  litigation.  Thus, the decree itself cannot be said to have a

25  purpose.  Rather, the parties have purposes generally opposed

 1   to each other, and the resultant decree embodies as much of

 2   those opposing purposes as the respective parties have the

 3   bargaining power and skill to achieve.  For these reasons,

 4   the scope of a consent decree must be discerned within its

 5   four corners and not by reference to what might satisfy the

 6   purposes of one of the parties to it."  End of quote.

 7        The second case that I would bring to Your Honor's

 8   attention -- maybe I will just cite it actually from the

 9   United States v. Armour case, a different section that

10   applies to the issue of intervening precedent.

11        And the Supreme Court said this:  "This argument --

12   that is the intervening precedent would have great force, if

13   addressed to a court that had the responsibility for

14   formulating original relief in the case after the factual and

15   legal issues raised by the pleadings had been litigated.  It

16   might be persuasive argument for modifying the original

17   decree, after full litigation on a claim that unforeseen

18   circumstances now made additional relief desirable to prevent

19   to the evils aimed at by the original complaint.

20        "Here, however, where we deal with a construction

21   of an existing consent decree, such an argument is out of

22   place."

23        Your Honor, we went to a considerable amount of

24   trouble to negotiate a consent decree.  It was carefully

25   reviewed by Judge Hochberg.  All its terms were complied

1    with.  Nobody that was given notice has submitted any

2    objection to the turnover of the money to my client.  And we

3    submit that my client has an entitlement to that in partial

4    satisfaction of his judgment in this district.

5              Unless Your Honor has some questions.

6              THE COURT:  No, that was very enlightening.  And,

7    you see, the docket is a little bit deceiving, and I

8    misunderstood.  I thought that this case had been stayed.

9    But it appears on the docket as closed pursuant to -- I am

10   not -- I am not sure what happened.  But it was terminated on

11   4/18/13.

12             MR. MOLOSHOK:  Your Honor, that was actually even

13   before he had filed his turnover motion.

14             THE COURT:  Right.

15             MR. MOLOSHOK:  And I am not sure administratively

16   how that came about.  We --

17             THE COURT:  Okay.

18             MR. MOLOSHOK:  So I don't think that's the issue.

19             If I may be heard, though.

20             THE COURT:  Well, I'm definitely going to let you

21   be heard.

22             MR. MOLOSHOK:  Yeah.

23             THE COURT:  But -- but I need to understand the

24   docket so I can clean it up administratively as well.

25             MR. MOLOSHOK:  Sure.

1          THE COURT:  So just bear with me a moment.

2          So now we have a termination without -- without

3    reason other than it follows the writ of execution.

4          Well, so when Judge Hochberg terminated Number 64,

5    that motion, she closed the case.  But that -- what's the

6    date of this?

7          MR. MOLOSHOK:  That's in -- that's in.

8          THE COURT:  That's different.

9          MR. MOLOSHOK:  That's January 2015, Your Honor.

10          THE COURT:  Yeah.

11          MR. MOLOSHOK:  Yeah.

12          THE COURT:  So let's --

13          MR. MOLOSHOK:  I don't know, every time I file

14    something in the case, the first screen that comes up is

15    warning, this case has been closed.  And then it allows me to

16    file.  So I --

17          THE COURT:  Yeah, that has happened.

18          Okay.  Just -- hold on.  So then we have the motion

19    for turnover in 2013.  And there's your service, Docket

20    Entry 14 and 15.

21          MR. MOLOSHOK:  That motion, Your Honor, was

22    withdrawn without prejudice.

23          THE COURT:  Okay.

24          MR. MOLOSHOK:  And then it was refiled.

25        (Pause in proceedings)

1            THE COURT:  Motion to withdraw, Docket Entry

2    Number 28 by Vera, obviously.

3            Then the motion for turnover is refiled?

4            MR. MOLOSHOK:  Yes, Your Honor.

5            MR. SWIFT:  It is, Your Honor, and Judge Hochberg

6    never ruled on it.

7        (Simultaneous conversation)

8            THE COURT:  Right.  Right.  I see that.  And

9    that -- that motion was then put on a closed docket on

10   January 2014.  Affidavits of service.

11           And there's some litigation attendant to that

12   motion, including motions to seal.

13           MR. SWIFT:  It may be helpful for Your Honor to

14   know something that isn't necessarily in the docket, and that

15   is --

16           THE COURT:  Okay.

17           MR. SWIFT:  -- the terrorism insurance reinsurance

18   act --

19           THE COURT:  Yes.

20           MR. SWIFT:  -- of -- which had enacted this part of

21   § 1610 of the Foreign Sovereign Immunities Act expired as of

22   December 31 of 2014.  And there was -- it was then reenacted

23   in early January by Congress.

24           But it was the concern that it would not be

25   reenacted that led us to write some letters to the judge and

 1   then sort of explain that, you know, we ought see what

 2   Congress does, because -- you know, one of the other things

 3   was whether they were going to amend the TRIA in certain

 4   respects.  Because my understanding is that TRIA, that is the

 5   Terrorism Reinsurance [*sic*] Act, was reenacted, but I am not

 6   aware of any amendments that affect this case.

 7            So -- so here we are.  And my sense is that Judge

 8   Hochberg had terminated it administratively, but that was for

 9   the purposes of the Court not anything definitive.

10            THE COURT:  Probably.

11            MR. SWIFT:  Yeah, for example, I couldn't have

12   appealed from that.

13            THE COURT:  Right.  Right.  I think -- it's an

14   administrative -- it appears to be an administrative

15   termination.

16            Mr. Moloshok, I'll allow you to be heard on

17   anything you want to be heard on.

18            MR. MOLOSHOK:  Thank you, Your Honor.

19            And if I may approach, because the consent order,

20   obviously, was a central aspect of what Mr. Swift was talking

21   about, and it would be useful if Your Honor had it in front

22   of you.  This is Document 57 on the docket.

23            THE COURT:  Okay.  Thank you.

24            MR. MOLOSHOK:  Mr. Swift's argument is essentially

25   that there was no need essentially for any of these

 1  proceedings because somehow or other this consent order had

 2  resolved everything.

 3           But as the consent order indicates on its face,

 4  this was a consent order concerning the form of notice and

 5  service that would be made --

 6           THE COURT:  I see.

 7           MR. MOLOSHOK:  -- on the third parties interested

 8  and why.

 9           And we had provided, subject to Her Honor's

10  approval, in paragraph 10, that if a third party failed to

11  assert a claim to the asset, that it could be turned over to

12  the plaintiff without further act on anybody's part.

13           That was unacceptable to Judge Hochberg, and she

14  struck out that provision.

15           So essentially all this consent order deals with is

16  how third parties would receive notice, and what happens

17  after they receive notice was left entirely to the ordinary

18  processes of the court.

19           Now, my client, one of the provisions of

20  paragraph 10 that was also struck out, had provided that if

21  the garnishee turned over the funds in that circumstance,

22  having not heard from anybody, the garnishee would be off the

23  hook.

24           But Judge Hochberg struck that out.

25           And in light of the fact that now every court of

 1   appeals to consider the issue has decided that the

 2   beneficiaries of wires and beneficiary banks on wires, have

 3   no interest in the blocked transfer, if we were to turn these

 4   over based on Mr. Swift's allegation that only the

 5   beneficiaries and only the beneficiary banks are agents or

 6   instrumentalities of the Republic of Cuba, we would

 7   essentially be dealing in innocent parties' property.

 8            And that -- not a question of a change from

 9   intervening authority.  That is the fact that Judge Hochberg

10   had said we could not make a turnover simply because people

11   failed to respond.  And Judge Hochberg did not say that

12   people who failed to respond would necessarily lose their

13   rights in this property.  She left that for another day.

14            So as we became aware of authority that would be

15   relevant to the Court's determination of what essentially is

16   the central issue in the case, which is whose assets are

17   these, we brought it to the Court's attention.

18            And it is correct, we are a stakeholder, but that

19   does not mean we are free to simply give the property away if

20   anybody ever asks for it.  We have to be sure that the proper

21   party is the party who's paid, and we will obviously follow

22   whatever directions the Court gives us in that regard.

23            But Court should have the benefit of the legal

24   landscape in making that determination.

25            And that's true, Your Honor, as we've pointed out,

 1   even for parties in default, because if the complaint does

 2   not state a cause of action in the sense that -- or in this

 3   case, the petitioner of the motion has not stated a cause of

 4   action, because it says I'm entitled to the blocked assets of

 5   the Republic of Cuba and its agents and instrumentalities.

 6   But all property belongs to people who are not agents or

 7   instrumentalities of Cuba.  They're not even alleged to be

 8   agents or instrumentalities of Cuba.  It does not state a

 9   cause of action.

10            So that is our position.  Again, if the Court feels

11   otherwise, we obviously are going to follow the dictate of

12   the Court.

13            THE COURT:  Does Mr. Levitt want to say anything?

14            MR. LEVITT:  Your Honor, I'll just be very brief.

15            This firm represents the Villoldos, who are also

16   judgment creditors of Cuba, but for different acts of

17   terrorism.  We have a different judgment.  We had reason to

18   believe that Northern Trust had assets belonging to Cuba.  We

19   initiated a turnover proceeding there, not knowing that Vera,

20   a different judgment creditor, was already in this district

21   and had already served the Northern Trust with a levy for

22   those assets.

23            We're not challenging Vera's priority at this time,

24   and our position is simply that we'd like our petition to

25   remain pending to secure our secondary position to the funds

1   to the extent Vera may abandon his claim or otherwise have

2   his judgment satisfied, we would be next in line.

3              THE COURT:  Okay.

4              MR. LEVITT:  We take no position on the legal

5   issues raised here.

6              THE COURT:  Okay.  I appreciate that.

7              I'm sorry, Mr. Swift, go ahead.

8              MR. SWIFT:  If I may just make a brief response.

9              THE COURT:  Sure.

10             MR. SWIFT:  Mr. Moloshok really addressed the issue

11  of what is -- where a continuing liability to a bank that

12  turns over funds pursuant to an order of this Court.  And I

13  submit that under New Jersey law, the bank is discharged from

14  any further liability.

15             Now, I can't explain why Judge Hochberg struck

16  paragraph -- the one paragraph she did, because there wasn't

17  any discussion with her about that.  This was submitted to

18  her, and she simply put an X across it.

19             However, the notice given to the -- those parties

20  receiving notice specifically said that unless they submitted

21  a written objection within 60 days of the notice, they could

22  be defaulted and the money could be turned over to the

23  judgment creditor.

24             So I think what the judge was doing was striking

25  out an automatic default, but it's clear there has been a

1   default, and nobody with standing has raised any substantive

2   objection to Vera receiving the money.

3            THE COURT:  I don't even know what process to

4   pursue at this point with respect to the docket

5   administratively.  I obviously am glad that you came in so I

6   understand the status a lot better.  I'm going to have to put

7   this together and do some research and see where we go from

8   here.

9            So you think that Judge Hochberg terminated the

10   motion pending other litigation?  Or pending Congress's

11   repassage of this law?

12            MR. MOLOSHOK:  Well, her order recites, Your Honor,

13   that there's a particular Supreme Court case --

14            THE COURT:  Right.

15            MR. MOLOSHOK:  -- I can't pronounce it, that the

16   U.S. Supreme Court accepted cert, I guess in --

17            THE COURT:  And is the issue an agency issue?

18            MR. MOLOSHOK:  No --

19            THE COURT:  Because I have not read that case.

20            MR. MOLOSHOK:  -- agency issue.  But it's not a --

21   it's not a ownership of electronic fund transfers issue.

22            So I guess it could be potentially of benefit to

23   Mr. Swift or to Mr. Levitt if the interpretation of agent

24   were interpreted more broadly than historically has been the

25   case.  So, for example, Mr. Swift has argued that some of the

1    beneficiaries of these -- or the beneficiary banks were owned

2    by the Republic of Cuba or are somehow managed by the

3    Republic of Cuba.

4              But agency potentially could be construed more

5    broadly.  And that's the issue that the Supreme Court is

6    considering in that particular case, who is an agent and

7    what --

8              THE COURT:  Right.

9              MR. MOLOSHOK:  -- what's the scope of agency.

10             But I don't think that's going to change ultimately

11   which side of the equation we have to look at here, which is

12   we are only going to be looking in the originator side of

13   these transactions, because what the appellate courts have

14   overruled -- and they overruled a number of district courts

15   to get there, I should say -- what appellate courts have all

16   ruled know is that if a wire transfer is interrupted,

17   essentially, nothing passes beyond my bank.  So, in other

18   words, the people who are the beneficiary bank and the

19   beneficiary never obtain any rights in the assets, and

20   therefore, it can't be levied on as if it were -- had ever

21   reached their hands.

22             So the money, if it -- except for the fact that

23   it's frozen by this Cuban asset control regulation for

24   purposes of negotiations with Cuba --

25             THE COURT:  This would be the intervening --

 1          MR. MOLOSHOK:  Yeah, we are the intervening bank.

 2          So if those control regulations were ever released,

 3  as, for example, is currently under discussion on account of

 4  our warming relations with Cuba potentially --

 5          THE COURT:  Right.

 6          MR. MOLOSHOK:  -- we would then be sending the

 7  money back to the originating bank to send it to its

 8  originator.  And --

 9          THE COURT:  Is that to say that your position is

10  merely administrative?

11          MR. MOLOSHOK:  That is correct.  And, in fact,

12  Mr. Swift was talking about interest, there is no interest,

13  because we never get any money.  I mean there's -- this is a

14  series of instructions.  It says --

15          THE COURT:  So how can you be a beneficiary if

16  there are no benefits?

17          MR. MOLOSHOK:  Well, that's exactly right because

18  once it's interrupted, then the benefits never flow.  And

19  this is in Article 4A of the U.C.C., which I didn't study in

20  law school, because it was adopted later, but -- and if I had

21  studied it, I am not sure I would have understood it, but

22  essentially this is a series of bank -- you pay that bank and

23  they'll pay their beneficiary --

24          THE COURT:  Right.

25          MR. MOLOSHOK:  -- and only once the whole thing is

1  completed, does anything actually zap through.  You have to

2  make sure that all the I's are dotted and the T's are crossed

3  before it goes to the -- and then it goes immediately to the

4  end of the line, essentially.

5        But here, we stopped because we said there's a

6  missing "I" because we're not allowed to deal with Cuba, so

7  we stopped it.  And we would have to send it back to our

8  originator.

9        But because of these Cuban asset control

10 regulations, we couldn't.  It's like in a net.  It just

11 stayed there as a series of instructions.

12       THE COURT:  I understand.  I understand a lot

13 better than I did, in any event.

14       MR. SWIFT:  You know, one, maybe two comments.

15       But after the Hausler and Calderon decisions in the

16 Second Circuit, which focused on state law, notwithstanding

17 that federal law said notwithstanding any law to the

18 contrary, Judge Hellerstein, who has many of these cases and

19 has issued a number of rulings on them, but he issued

20 turnover orders because we had satisfied the terms of the

21 consent decree.

22       THE COURT:  But was it the same circumstance where

23 it was an intervention on sort of a pass-through?

24       MR. SWIFT:  Exactly the same, Your Honor.

25       MR. MOLOSHOK:  Well, not quite, Your Honor.  Of

 1   course I am not in that case, but my impression is -- and

 2   Mr. Swift can correct me if I'm wrong -- Judge Hellerstein

 3   broke this case into a Phase 1 and a Phase 2.  And in the

 4   Phase 1 provision, it dealt with whether the originator was

 5   Cuba or a Cuban bank, and Phase 2 would be the situation

 6   which is -- that we are in.  Phase 2, as I understand it, was

 7   stayed pending the outcome in Hausler and Calderon.  I don't

 8   know that that has ever been revived.  And I believe that the

 9   final turnover orders that he's referring to were in the

10   Phase 1 section of the case.

11           MR. SWIFT:  It only gets more complicated, but he's

12   correct it was Phase 1, but we just hadn't arrived at Phase 2

13   yet in terms of giving notice.  But he was interpreting the

14   consent decree.  And so he's issued a turnover order.

15           So in any event, my point is this that the bank

16   gets discharged pursuant to New Jersey law and an order of

17   this Court directing turnover; that my client has prima facie

18   entitlement to the funds by virtue of complying with the

19   § 1610(f) of the Foreign Sovereign Immunities Act and the

20   consent decree of this Court.

21           THE COURT:  Very interesting, gentlemen.

22           I don't have a lot more to say right now.  I do

23   want to get familiar with the docket and do some research and

24   get a plan so I know where we go from here.  I don't have

25   much else to say, because other than your education, I have

|Hearing
|12-mc-00309, April 21, 2015

1  no familiarity with the cases -- either of the cases or the

2  docket.  They came as sort of a surprise to us, and we're

3  going to have to let you know where we go from here.

4        But I appreciate your coming in.  I'm going to

5  order the transcript, and we will be working on this so that

6  one way or the other we can find a path to justice, if you

7  will.

8        Thank you very much.

9        UNIDENTIFIED SPEAKERS:  Thank you, Your Honor.

10        MR. LEVITT:  Thank you, Your Honor.  Thank you for

11  allowing me to be on the phone.

12        (Conclusion of proceedings at 11:37 A.M.)

13

14

15

16

17

18

19

20

21

22

23

24

25

|Hearing
|12-mc-00309, April 21, 2015
Certification

25

Certification

1       I, SARA L. KERN, Transcriptionist, do hereby certify
that the 25 pages contained herein constitute a full, true,
and accurate transcript from the official electronic
recording of the proceedings had in the above-entitled
matter; that research was performed on the spelling of proper
names and utilizing the information provided, but that in
many cases the spellings were educated guesses; that the
transcript was prepared by me or under my direction and was
done to the best of my skill and ability.

       I further certify that I am in no way related to any of
the parties hereto nor am I in any way interested in the
outcome hereof.

S/ *Sara L. Kern*                    18th of May, 2015

_____          _____
Signature of Approved Transcriber              Date


Sara L. Kern, CET**D-338
King Transcription Services
3 South Corporate Drive, Suite 203
Riverdale, NJ  07457
(973) 237-6080